# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| JONATHON CLARKE,<br><br>　　Plaintiff,<br><br>vs.<br><br>ALJEX SOFTWARE, INC., and TOM HEINE,<br><br>　　Defendants, | Case No.: 1:16-cv-00004-REB<br><br>MEMORANDUM DECISION AND ORDER ON MOTIONS TO DISMISS (Dkt Nos. 45 & 50) |
| ALJEX SOFTWARE, INC.,<br><br>　　Counter-claimant,<br><br>vs.<br><br>JONATHON CLARKE,<br><br>　　Counter-defendant. | |

Pending are Plaintiff's Renewed Motion to Dismiss Defendant's Counterclaim (Dkt. 50) and Defendants' Motion to Dismiss Second Amended Complaint (Dkt. 45). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. BACKGROUND

Defendant Aljex Software, Inc. ("Aljex") alleges that it is a New Jersey corporation in the business of providing cloud-based logistics software. Defs.' Answer to Second Am. Compl., Affirmative Defenses, and Countercl. of Aljex Software, Inc. ¶¶ 2, 8 ("Countercl.")

MEMORANDUM DECISION AND ORDER - 1

(Dkt. 46).[1] Aljex's CEO is Defendant Tom Heine ("Heine"), a Colorado resident. *Id.* ¶ 3. In early 2015, Aljex placed an advertisement on a Denver, Colorado "Craigslist" online forum seeking a programmer to develop a new website. *Id.* ¶¶ 9, 10. On February 25, 2015, Jonathon Clarke ("Clarke") responded and quoted a $1500 flat rate to build the website. *Id.* ¶ 11. Heine communicated further with Clarke and ultimately hired him to develop the website. *Id.* ¶ 12. On February 26, 2015, Clarke requested $750 via an online payment service, which Aljex paid. *Id.* ¶ 13. Clarke signed a contract to develop the website the same date. *Id.* ¶ 14. The contract required Clarke to complete the website "no later than 30 days after [Aljex] has submitted all the necessary materials." *Id.* ¶ 16. Aljex began providing the necessary materials that day. *Id.* ¶ 17.

According to Aljex, beginning on March 2, 2015, Heine and Aljex's Vice President of Sales, Robyn Freeman, began to contact Clarke inquiring on the status of the website. *Id.* ¶¶ 18–20. Clarke was either unresponsive or stated he would have something "later in the week." *Id.* A conference call was set up for March 19, 2015, but Clarke failed to participate in the conference call or to answer telephone calls to his personal phone. *Id.* ¶¶ 21–22.

On March 20, 2015, Clarke emailed Heine a link to review the website but requested an additional $600 payment before the site would be uploaded for review. *Id.* ¶¶ 24–26. Heine responded that he would not make the payment until he saw the website. *Id.* ¶ 28. Clarke demanded advance payment before he would permit Aljex to review any work he had

---

[1] Clarke's second amended complaint includes events occurring after the events alleged in Aljex's counterclaim. For clarity, this background is provided chronologically by allegation. Heine is not a party to Aljex's counterclaim against Clarke, but Aljex and Heine are represented by the same counsel in defending Clarke's claims against them. The same pleading contains both parties' answers as well as Aljex's counterclaim. *See* Countercl. (Dkt. 46).

MEMORANDUM DECISION AND ORDER - 2

performed. *Id.* ¶¶ 33–34. Aljex brings counterclaims of breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud. *Id.* ¶¶ 40–65.

Clarke brings suit against both Aljex and Heine under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and under state law for invasion of privacy by intrusion upon seclusion. Pl.'s Second Am. Compl. ¶ 1 ("SAC") (Dkt. 44). Clarke alleges that Defendants Aljex and Heine repeatedly sent fax data to Clarke's telephone using an "automatic telephone dialing system" as that term is defined by the TCPA. *Id.* ¶¶ 6–8. Specifically, Clarke alleges that between late March and early April of 2015, Defendants placed over 1000 calls from Aljex's number to Plaintiff's cell phone. *Id.* ¶ 8. The calls were fax calls which Clarke alleges that Defendants knew would result in repeated, auto-dialed, calls that could not be answered. *Id.* ¶ 12. Heine also sent Clarke an email from his work email saying that Heine had prepared a website titled "jonathanclarkesucks.com" that would be forthcoming. *Id.* ¶ 10. Heine sent "thousands of emails" to Clarke, making it difficult for Clarke to use his email. *Id.* ¶ 13. These actions, Clarke alleges, created a pattern of intentional harassment. *Id.*

Each party has filed a motion to dismiss. Defs.' Mot. to Dismiss Second Am. Compl. (Dkt. 45); Pl.'s Renewed Mot. to Dismiss Def's Countercl. (Dkt. 50). Clarke contends a lack of subject matter jurisdiction, with no basis for either supplemental jurisdiction or original diversity jurisdiction. Mem. in Supp. of Pl.'s Mot. to Dismiss (Dkt. 34-1).[2] Heine and Aljex

---

[2] Docket No. 34 is captioned as the memorandum in support of plaintiff's motion to dismiss defendant's counterclaim, while Docket No. 34-1 is captioned as the actual motion to dismiss. However, it is clear from the context and contents of the documents that Docket No. 34-1 is the memorandum and Docket No. 34 is the motion. This Decision refers to the memorandum as Docket No. 34-1 even though that document's caption indicates it is the motion and not the memorandum.

MEMORANDUM DECISION AND ORDER - 3

contend that Clarke's second amended complaint fails to state a claim under Fed. R. Civ. P. 12(b)(6). Defs.' Motion to Dismiss Second Am. Compl. (Dkt. 45); Mem. in Supp. of Defs.' Mot. to Dismiss Second Am. Compl. (Dkt. 45-1).

## II. ANALYSIS AND RULINGS

### A. On this Record, the Court has Jurisdiction to Consider the Claims made Against Clarke.

Clarke argues that this Court has no subject matter jurisdiction to consider Aljex's counterclaims, all of which arise exclusively under state law. Mem. in Supp. of Pl.'s Mot. to Dismiss Def.'s Countercl. (Dkt. 34-1); Pl.'s Reply in Supp. of Pl.'s Mot. to Dismiss Def.'s Countercl. (Dkt. 42). Apparently drawing upon Fed. R. Civ. P. 12(b)(1), Clarke argues that neither supplemental jurisdiction under 28 U.S.C. § 1367, nor original diversity jurisdiction under 28 U.S.C. § 1332, applies to Aljex's claims. *Id.* The Court, however, concludes that there is supplemental jurisdiction to consider Aljex's counterclaims for the reasons which follow; therefore, it need not reach the question of diversity jurisdiction.

A compulsory counterclaim is one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and does not require adding another party over whom the court cannot acquire jurisdiction." FED. R. CIV. P. 13(a). To assess whether a claim is compulsory, the Ninth Circuit employs a liberal "logical relationship" test. *In re Lazar*, 237 F.3d 976, 979 (9th Cir. 2001). Under this test:

> [a] logical relationship exists when the counterclaim arises
> from the same aggregate set of operative facts as the initial claim,
> in that the same operative facts serve as the basis of both claims
> or the aggregate core of facts upon which the claim rests activates
> additional legal rights otherwise dormant in the defendant.

*Id.* (citing *Pinkstaff v. United States*, 974 F.2d 113, 115 (9th Cir. 1992)). "This flexible approach to Rule 13 problems attempts to analyze whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Pochiro v. Prudential Ins. Co. of America*, 827 F.2d 1246, 1249 (9th Cir. 1987) (citation omitted).

Permissive counterclaims are claims that are not compulsory. FED. R. CIV. P. 13(b). A district court may exercise supplemental jurisdiction over a permissive counterclaim if it "form[s] part of the same case or controversy" as a claim over which the court has original jurisdiction. 28 U.S.C. § 1367(a), (c). This is a broader standard than that employed for compulsory counterclaims. *Campos v. W. Dental Srvs., Inc.*, 404 F. Supp. 2d 1164, 1168 (N.D. Cal. 2005); *Avery v. First Resolution Mgmt. Corp.*, 2007 WL 1560653, *2 (D. Or. May 25, 2007). A "claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together." *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004).

A federal court with the power to hear state law claims has discretion whether to exercise that power, under the conditions provided in 28 U.S.C. § 1367(c). *Acri v. Varian Ass'ns, Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997). That is, "while courts 'shall' have supplemental jurisdiction under § 1367(a), they 'may' decline to exercise it under § 1367(c)." *Id.* Section 1367(c) provides four bases for declining to exercise supplemental jurisdiction:

> (1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

MEMORANDUM DECISION AND ORDER - 5

Here, Clarke argues that Aljex's counterclaims are not compulsory because they are not logically connected to Clarke's federal claim. Pl.'s Mem. in Supp. of Mot. to Dismiss Countercl. 2 (Dkt. 34-1). He points out that his claim is based on allegations of TCPA violations, while Aljex's claims are based on allegations of breach of contract and fraud. *Id.* In response, Aljex asserts that its counterclaims are compulsory and even if they were instead permissive, supplemental jurisdiction would allow the Court to hear them. Def.'s Resp. In Opp'n to Mot. to Dismiss Def.'s Countercls. 4–8 (Dkt. 40). Further, Aljex contends that various common facts will be involved in resolving both Clarke's TCPA claim as well as Aljex's counterclaims.

Aljex's arguments are well taken. Both Aljex and Clarke allege the existence of a business relationship, although Aljex's allegations are more detailed. Aljex alleges that relationship began in late February 2015, while Clarke alleges the TCPA violations occurred between late March and early April 2015. Aljex and Heine admit placing calls to Clarke's telephone number, and Aljex also independently alleges the fact of calls or attempted calls to Clarke on at least two occasions. Countercl. pp. 3, 9 at ¶ 21 (Dkt. 46). Thus, at a minimum, the dates, times, and circumstances of certain calls are relevant to all the claims at issue.

Further, Aljex alleges that Clarke gave his phone number to Aljex and Heine, by which he consented to be called by them, at the outset of the parties' relationship. *Id.* pp. 7–8 at ¶ 11. One element of Clarke's TCPA claim is that he did not consent to the calls; hence, the context and circumstances of how and why Aljex had Clarke's phone number is factually relevant. Additionally, Clarke alleges that he emailed Heine on April 1, 2015 to revoke any such consent. SAC ¶ 11 (Dkt. 44). Yet, Aljex alleges that Heine emailed Clarke on the very same day to

continue inquiring about Clarke's perceived breach of contract. Countercl. p. 10 at ¶ 31 (Dkt. 46). Thus, it appears that the content and alleged purpose of the parties' communication on that day are significant facts common to each party's claims.

Finally, Clarke seeks treble damages on his TCPA claim by alleging that the violations were knowing or willful. SAC p. 4 at ¶ C (Dkt. 44). A decision upon whether such violations, if they were violations, was knowing or willful requires an examination of the motivations of Aljex and Heine in placing the alleged calls. The parties' business relationship prior to the alleged TCPA violations – including any breach of contract or fraud – is therefore relevant to Clarke's TCPA claim.

With such overlaps in the relevant factual record, the Court concludes that Aljex's counterclaims share a common nucleus of operative facts with Clarke's TCPA claim. The Court finds that none of the 28 U.S.C. § 1367(c) considerations applies so as not to exercise supplemental jurisdiction. Accordingly, this Court takes supplemental jurisdiction over Aljex's counterclaims. Clarke's motion to dismiss for lack of subject matter jurisdiction is denied.

**B. Clarke's Claims are Stated Sufficiently to Avoid Dismissal.**

Aljex and Heine move to dismiss Clarke's second amended complaint, for failure to state a claim. Defs.' Mot. to Dismiss Second Am. Compl. (Dkt. 45); Mem. in Supp. of Defs.' Mot. to Dismiss Second Am. Compl. (Dkt. 45-1). A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is granted if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court considering a motion to dismiss "must take all of the factual allegations in the complaint as true," but the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678; *see also Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Therefore, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Caviness v. Horizon Comm. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (citation omitted).

 1. **Clarke's TCPA Claim Survives Dismissal.**

The TCPA provides that "it shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii). An automatic telephone dialing system is "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* § 227(a)(1). "When evaluating the issue of whether equipment is an ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the *capacity* 'to store or produce telephone numbers to be called, using a random or sequential number generator.' Accordingly, a system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009).

Defendants seek to dismiss Clarke's TCPA claim on the basis that he has not sufficiently pleaded the use of an "automatic telephone dialing system" ("ATDS"). Mem. in Supp. of Defs.' Mot. to Dismiss Second Am. Compl. (Dkt. 45-1). They accurately frame the elements of a valid TCPA claim as "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012); 47 U.S.C. § 227. Mem. in Supp. of Defs.' Mot. to Dismiss Second Am. Compl. 4 (Dkt. 45-1). For the purposes of this motion, they do not argue the first or third elements. They do assert, however, that Clarke has not adequately alleged the use of an ATDS. *Id.* at 4–7. Specifically, they argue that Clarke has not pleaded concrete allegations about the alleged system's capacity for dialing numbers randomly or sequentially. *Id.* at 5. They also argue that the large number of calls, with no indication that Defendants called anyone besides Clarke, indicates Clarke was individually targeted and not one of a "randomly or sequentially generated list of recipients." *Id.* at 6.

Here, Clarke' second amended complaint alleges that Defendants "place[d] well over 1000 calls" to him between "late March and early April of 2015." SAC ¶ 8 (Dkt. 44). Clarke further alleges that "Heine logged on to the fax server for . . . Aljex, and, using the program 'Telnet,' intentionally gave instructions to the fax server using a 'script,' which resulted in a backlog of over 1800 instructions to the fax server to send faxes to [Clarke's] cellular phone." *Id.* ¶ 12. Finally, Clarke also alleges that "[o]n information and belief . . . [t]he server that creates the faxes has the ability to store numbers to be called and then call those numbers sequentially or randomly with fax data." *Id.* ¶ 6.

MEMORANDUM DECISION AND ORDER - 9

Clarke likely does not have inside knowledge of Defendants' operations and equipment, and the Court recognizes the inherent difficulty in pleading a TCPA claim without such inside knowledge. However, Clarke did expressly allege, on information and belief, that Defendants' calls to him were made using an ATDS. SAC ¶ 6 (Dkt. 44). Although this alone might not suffice to survive dismissal, Clarke offers additional factual allegations. His allegation that over 1,000 calls were placed to him in less than a month supports an inference that the calls were automatic. So too does his detailed factual allegation that the calls were placed automatically after Heine accessed the fax server via a "Telnet" interface and used a "script" to provide over 1,800 instructions to the server. Although Clarke does not expressly allege that Defendants' fax server had the capacity to use a random or sequential number generator, his allegation that the system could be "scripted" to dial the same number hundreds of times supports a reasonable inference that the system is programmable and could therefore be similarly "scripted" to dial random or sequential numbers instead.

At this stage, Clarke's allegations are sufficient to support a plausible and reasonable inference that Defendants used an ATDS. Therefore, Defendants' motion to dismiss Clarke's TCPA claim is denied.

### 2. Clarke's Invasion of Privacy by Intrusion Claim Survives Dismissal.

Idaho common law recognizes the tort of invasion of privacy by seclusion upon intrusion. *Jensen v. State*, 72 P.3d 897, 902 (Idaho 2003). The elements to establish a prima facie case for intrusion upon seclusion are: (1) an intentional intrusion by the defendant; (2) into a matter, which the plaintiff has a right to keep private; (3) by the use of a method, which is objectionable to the reasonable person. *Id.* "To be actionable, the prying or intrusion into the

plaintiff's private affairs must be of a type which is offensive to a reasonable person." *Hoskins v. Howard*, 971 P.2d 1135, 1141 (Idaho 1999).

Clarke alleges for the first time in his second amended complaint that Defendants violated his privacy via intrusion upon seclusion. SAC p. 4, second paragraph marked as 16 (Dkt. 44). In support, Clarke alleges that "Defendant Heine, and by extension Defendant Aljex, intended, by their actions in placing an extremely large number of repeated telephone calls and emails, to interfere with Plaintiff's interest in solitude or seclusion, either as to his person or as to his private affairs or concerns. Such actions were of such a nature as to be offensive to a reasonable person." *Id.* ¶ 14.

Defendants argue that Clarke cannot state such a claim because he offers "conclusory allegations merely tracking the elements of the cause of action." Mem. in Supp. of Defs.' Mot. to Dismiss Second Am. Compl. 8 (Dkt. 45-1). They note that Clarke "fails to state any specific facts relating to the expectation of privacy at issue, how or why these communications were allegedly offensive, or why their method of delivery would be objectionable to a reasonable person." *Id.* Nor, they argue, does he provide context regarding his prior relationship with Defendants. *Id.* Finally, they contend that no Idaho court has ever recognized such a claim upon similar facts. *Id.* at 8–9.

Idaho's adoption of the tort of intrusion upon seclusion draws upon the relevant section of the Restatement (Second) of Torts. *Uranga v. Federated Publ'ns, Inc.*, 67 P.3d 29, 32 (Idaho 2003). The Restatement codifies the tort at section 652B, and it includes an illustration in the comments to that section that is analogous to the conduct Clarke alleges here:

> A, a professional photographer, seeking to promote his business, telephones B, a lady of social prominence, every day for a month, insisting that she come to his

MEMORANDUM DECISION AND ORDER - 11

studio and be photographed. The calls are made at meal times, late at night and at other inconvenient times, and A ignores B's requests to desist. A has invaded B's privacy.

RESTATEMENT (SECOND) OF TORTS § 652B cmt. b Illustration 5 (1977). The illustration indicates that the persistence and inconvenience of the calls, along with continuation of such calls after a request to desist, are facts giving rise to such a claim. Although "[t]he application or adoption of any section of the Restatement in a given case does not necessarily include all the comments thereto," Idaho appellate courts "review each comment on a case by case basis, as the occasion arises, to determine if such comment warrants incorporation into the common law of Idaho." *Peterson v. Idaho First Nat. Bank*, 791 P.2d 1303, 1305 (Idaho 1990). The illustrations in comment 'b' to section 652B have not been disclaimed or rejected in a reported Idaho case.

Here, Clarke alleges the Defendants placed over 1,000 calls to him in a span of a month or less, at least some of which were made after he told Defendants that he had withdrawn any consent to be called. He also alleges that Heine sent him thousands of emails, apparently during the same period, making it difficult for Clarke to use his email account. Finally, Clarke specifically alleges both that this conduct was intentional and that it was offensive, allegations which are plausible in context. The fact that no reported Idaho case has recognized the tort on similar facts to this case is of no import here – if the matter is of first impression, then it is just that. Contrawise, of course, if there were decisions holding that the tort does not exist in Idaho, on similar facts, then those decisions might well be controlling here. However, Clarke's allegations of receiving thousands of calls and emails that did not cease upon his request

provide enough for this claim to survive dismissal for failure to state a claim under Idaho law. Accordingly, Defendants' motion to dismiss this claim is denied.

### III. ORDER

Based on the foregoing, IT IS HEREBY ORDERED that: (1) Plaintiff Clarke's Renewed Motion to Dismiss Defendant's Counterclaim (Dkt. 50) is DENIED; and (2) Defendants' Motion to Dismiss Second Amended Complaint (Dkt. 45) is DENIED.

An updated Case Management Order will be filed separately.

DATED: **September 21, 2017**

Honorable Ronald E. Bush
Chief U. S. Magistrate Judge